**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Tamra Ann Jolley,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin,<br><br>    Defendant. | No. CV 12-2447-PHX-JAT<br><br>**ORDER** |

## I. Defendant's motion to remand

As this Court noted in the Order of December 19, 2013:

> Plaintiff in this case applied for and was denied social security disability benefits. Plaintiff appealed that denial to this Court. On appeal, Defendant has conceded error and asked this Court to remand to the agency for further findings. Plaintiff argues that remand should be for an immediate award of benefits and not for further findings.

Doc. 24.

The Court ordered supplemental briefing on the parties' respective positions as follows:

> [T]he motion to remand claims that the Administrative Law Judge (ALJ) erred in several respects regarding Plaintiff's mental limitations. Conversely, the response argues that regardless of the errors the ALJ committed on the mental limitations, the ALJ's errors regarding Plaintiff's physical limitations (as recounted by her treating physicians, herself, and third parties) alone justify a remand for award of benefits. Plaintiff then argues that the ALJ's errors as admitted by Defendant regarding mental limitations do not justify remand for a completely new determination on the physical limitations. Again, Defendant did not file a reply to address any of these arguments.

*Id.*

Consistent with the Court's Order, the parties filed supplemental briefs on the physical limitations and whether a remand for a new determination or benefits is appropriate. As discussed above, Defendant has moved for remand for the ALJ to properly consider Plaintiff's mental limitation. In the supplemental briefing, Defendant argues that the ALJ's determination that Plaintiff's physical limitations do not entitle her to benefits should be affirmed. However, Defendant states, "In any event, on remand, Plaintiff will receive a de novo hearing and will have the opportunity to present all the evidence related to both her physical and mental impairments to the ALJ, who will re-evaluate her residual functional capacity based on the record as a whole." Doc. 25 at 7. In her sur-reply, Plaintiff continues to argue that based on her physical limitations alone, she is entitled to a remand for an award of benefits.

### A. Plaintiff's physical limitations

#### 1. Treating physicians

The ALJ can reject the opinion of a treating physician in favor of the conflicting opinion of another examining physician "if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.' " *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). Here, Plaintiff argues that the ALJ did not give specific and legitimate reasons for discrediting the testimony of Drs. Bhatka, Bernstein, and Yonan. Doc. 21 at 2.

Drs. Bhatka and Bernstein diagnosed Plaintiff with degenerative disc disease and fibromyalgia. Doc. 21 at 2. The ALJ articulated the following reasons for rejecting these diagnoses as disabling:

1. A May 2008 normal MRI with no fracture or subluxation or evidence of herniated disc, spinal stenosis, neural foraminal narrowing, or marrow edem.
2. An April 2008 self report of improvement with steroid injections.
3. An October 2008 MRI with only mild degenerative change and minimal disc bulge.

4.  A December 2008 clinical finding of normal gait, and normal walking, negative Romberg, 3+ reflexes, good range of motion, ability to flex well beyond 90 degrees, and straight leg raising and hip range of motion being negative.

5.  A June 2009 physical examination of the musculoskeletal system with no joint pain, swelling, injury, limitation on motion; no muscle weakness, pain, cramps; and a full range of motion with good muscle tone and no joint inflammation.

6.  January 2010 progress notes documented normal gait and station, and Plaintiff had a full range of motion in all extremities.

7.  In 2007 through 2009 Plaintiff's diagnosed fibromyalgia was successfully managed with medication.

8.  In 2010, Dr. Bhatka's own records indicated that fibromyalgia was a past medical condition, not a current condition.

Doc. 10-3 at 23-24.

The ALJ further explicitly discounted Dr. Bhatka's endorsement of disability because Dr. Bhatka's own treatment notes were consistent with only a mild impairment. Doc. 10-3 at 28. Finally, the ALJ explicitly reject the disability finding of Nurse Practitioner Leisky, which was endorsed by Dr. Bernstein, because the finding that the fibromyalgia was disabling was inconsistent with the medical records that showed it was managed and improved with pain medication. Doc. 10-3 at 28. The Court finds the above list, together with the ALJ's explicit findings as to these doctors, to be specific and legitimate reasons based on substantial evidence of record to the reject the testimony of Drs. Bhatka and Bernstein.

Dr. Yonan diagnosed Plaintiff with pulmonary symptoms, shortness of breath, sleep apnea, and hypersomnolence syndrom. Doc. 21 at 2; Doc. 13 at 4. The ALJ articulated the following reasons for rejecting these diagnoses as disabling:

1.  An August 5, 2009 sleep study of claimant failed to demonstrate significant sleep breathing disorders.

2.  An August 25, 2009 split night report, Plaintiff's oxygen intake was assisted by a by a CPAC mask.

3.  A September 2009, self report that Plaintiff's sleep apnea was aided by servo ventilation.

4.  By March 2010, Plaintiff's sleep apnea had improved, with only occasional episodes

- 3 -

and there was improvement by using the CPAC machine.

5. By April 2010, Plaintiff had stopped using the CPAC device, which evidenced that the sleep apnea had resolved and/or was not disabling.

6. In April 2008 and May 2008 exams, Plaintiff's chest and lungs were normal and clear.

7. In August 2008 when Plaintiff had bronchitis, Plaintiff was negative for Sjogren's syndrome, various inflammatory markers, pneumonia and infective etiology.

8. In September 2008, Plaintiff had only mild shortness of breath and was negative for hemoptysis and sputum production; Plaintiff's chest was within normal limits, and her condition was aided by nebulized medication and a pulmonary functioning test disclosed only mild abnormality.

9. In November 2008 Plaintiff's pulmonary status was stable and Plaintiff had no wheezing, coughing, congestion, hemoptysis, respiratory infections, tuberculosis, or chest wall pain.

10. In December 2008, Plaintiff's lungs were clear to auscultation and pulmonary function testing revealed only mild bronchial abnormality. By April 2009, Plaintiff was "doing well" as to her asthma.

11. In April 2009, treating physician Bhatka's notes state that Plaintiff's respiratory system was normal and that her lungs were clear to auscultation in all fields with no rales, rhonchi, or wheezes.

12. In August 2009, a pulmonary examination revealed no wheezing, cough, congestion, hemoptysis, respiratory infections, tuberculosis or chest wall pain.

13. In October and November 2009, Dr. Yonan's own notes document that Plaintiff's pulmonary status was stable and that her pulmonary function testing showed no significant restrictive or obstructive pulmonary pathologies.

14. In March 2010, Plaintiff self reported that she was okay and did not have shortness of breath, wheezing, cough, or congestion and that her asthma was improved.

15. A July 2010 treatment record characterized Plaintiff's pulmonary status as stable.

Doc. 10-3 at 24-26.

Finally, the ALJ explicitly discounted Dr. Yonan's conclusion of disability because Dr. Yonan's own notes consistently established that Plaintiff's pulmonary status was stable. Doc. 10-3 at 28. The Court finds the above list, with the ALJ's explicit finding as to Dr. Yonan, to be specific and legitimate reasons based on substantial evidence of record to reject the testimony of Dr. Yonan.

Accordingly, the Court affirms the ALJ's decision of non-disability based Plaintiff's

- 4 -

1 physical limitations.

### 2. Plaintiff's subjective complaints

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035–36. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See, Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341)).

Second, if the claimant meets the first test, then the ALJ "'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala,* 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak v. Colvin*, No. CV-12-02420-PHX-JAT, 2014 WL 523007, at *8–9 (D. Ariz. Feb. 10, 2014)).

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to explain the ALJ's credibility evaluation of Plaintiff. At one point in the opinion, the ALJ states:

- 5 -

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

Doc. 10-3 at 27. Plaintiff argues this reasoning is inadequate because it is circular. Doc. 21 at 6 ("The ALJ rejected [Plaintiff's] testimony to the extent it conflicted with his RFC assessment, but the RFC assessment is supposed to be informed by a claimant's testimony.").

Beyond the above quoted language, the ALJ made other findings regarding Plaintiff's self-reported symptoms and credibility. Specifically, the ALJ stated:

> The claimant reports problems with focus, memory and concentration. She also reports that she is unable to count change, pay bills, or handle a savings account or check book. On the other hand, the clamant states she is able to read and knit, which require focus and concentration. The claimant also reportedly knows how to use a computer, and enjoys working on puzzles.

Doc. 10-3 at 22 (internal citations to the record omitted). Thus, the ALJ gave the additional reason for discounting Plaintiff's symptom testimony that the Plaintiff's own self-reported symptoms were not consistent.

Additionally, the ALJ noted Plaintiff's narcotic dependancy, which included stealing, in detail. Specifically, the ALJ recounted:

> Lastly, the record is significant for narcotic dependency. Medical records document a history of high dose narcotic medication, including the drugs morphine and Percocet. In October 2008, the claimant's pain management speciality, Dr. Jain, reportedly was "uncomfortable" giving the claimant further pain medications. In April 2010, the claimant reportedly was abusing Percocet on a regular basis. On October 2, 2009, the claimant's mother reported year-long addiction behavior, and advised the claimant's therapist at Terros that the claimant had been admitted to Banner Thunderbird after an accidental overdose on the anti-anxiety medication Ativan. The claimant reportedly admitted stealing and taking her mother's Soma pain medications. In November 2009, claimant's pulmonologist, Dr. Abdullah Yonan, diagnosed the claimant with narcotic dependence.

Doc. 10-3 at 27 (internal citations to the record omitted).

Evidence of a plaintiff's drug seeking behavior can be a reason to find the plaintiff not credible. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (upholding the rejection on a doctor's opinion that was premised on the plaintiff's non-credible self-reported

- 6 -

1 symptoms). In this case, the ALJ found that the claimant exhibited significant narcotic
2 dependency, including stealing to obtain drugs, and that her own symptom testimony was
3 inconsistent. The Court finds that these reasons are clear and convincing reasons supported
4 by substantial evidence of record for the ALJ to have discounted Plaintiff's credibility and
5 symptom testimony.

### 3. Third party lay witness testimony

Next, Plaintiff argues that the ALJ "failed to even mention" Plaintiff's mother's reporting of Plaintiff's symptoms. Doc. 21 at 7. However, the ALJ addressed Plaintiff's mother's testimony in two places in his opinion.

First, the ALJ noted that he had a Third Party Function Report from Plaintiff's mother which indicated that Plaintiff is able to independently shop for groceries. Doc. 10-3 at 22. Second, the ALJ noted that in 2009, Plaintiff's mother reported year-long addiction behavior, including an accidental overdose. *Id*. at 27.

Plaintiff's mother's Third Party Function Report has more information in it that the two items specifically identified by the ALJ. For example, it says that Plaintiff bathes several times per day and at night to try to relax. Doc. 10-7 at 18.

Under *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), "[i]f the ALJ wishes to discount the testimony of the lay witness[], he must give reasons that are germane to each witness." In this case, while the ALJ clearly considered Plaintiff's mother's Third Party Function report, he did not articulate a specific "germane" reason why he was rejecting the report.

This Court too has reviewed the report as a whole. Doc. 10-7 at 16-23. The Court notes that in the report, Plaintiff's mother opined, "now she <u>can not</u> work, needs help w/ cleaning , laundry, meals, bills". Doc. 10-7 at 17. This third-party-lay opinion would favor a remand for an award of benefits. However, even when an ALJ has failed to give germane reasons for discounting a lay witness's testimony, this Court can affirm if the error was

- 7 -

1  harmless.[1] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Specifically, the Court in

2  *Molina* stated:

> [I]f an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations. Further, where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not "clearly link his determination to those reasons." *Lewis*, 236 F.3d at 512.

*Molina*, 674 F.3d at 1121.

Here, the ALJ rejected the same symptom and limitation testimony offered by Plaintiff's mother in rejecting Plaintiff's own complaints and Plaintiff's doctor's testimony. Accordingly, the ALJ was not required to "link" his rejections of those same symptoms to Plaintiff's mother's report. Additionally, the ALJ is not required to give deference to Plaintiff's mother's legal conclusion about whether Plaintiff is disabled. *See generally McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (holding that the ALJ does not have to give deference to a witness's opinion on "the ultimate determination of disability").

Thus, based on all of the foregoing, the Court finds that the ALJ's failure to give specific, germane reasons for discrediting Plaintiff's mother's report was harmless error. Nonetheless, the Court will remand this case for a de novo determination, at which point Plaintiff can argue that the ALJ should rely more heavily on Plaintiff's mother's report.[2]

---

[1] Because the Government has conceded error regarding Plaintiff's mental limitations, remand will be the ultimate result in this case. However, the Court will nonetheless apply the harmless error standard to determine whether remand for award of immediate benefits is appropriate.

[2] Further, on de novo review, the ALJ should assess Plaintiff's mother's credibility considering that Plaintiff's therapist noted that Plaintiff was concerned about her mother's motivations. Doc. 10-19 at 28. Specifically, the therapist noted: "CLIENT VENTED ABOUT CONTINUOUS ISSUES IN LIVING WITH HER PARENTS.... CLIENT INDICATED SHE HAS A SSN APPLICATION PENDING.... CLIENT HOPES TO MOVE OUT ON HER OWN IF SHE IS APPROVED. CLIENT STATED SHE KNOWS THAT IF SHE GETS APPROVED THEN SHE WILL GET A LUMP SUM AND HER

### B.  Combination of Impairments

Plaintiff also argues that the ALJ erred in considering her medical evidence by considering each of her symptoms separately and not as a combination of symptoms. Doc. 21 at 4. In his opinion, the ALJ stated, "In sum, after a careful review of the record, the undersigned finds the claimant does not have an impairment, **or combination of impairments**, that limits her ability to perform basic work activity." Doc. 10-3 at 28 (emphasis added). Thus, the Court finds that the ALJ did review the Plaintiff's symptoms together. Nonetheless, on remand for de novo review, Plaintiff may further explain to the ALJ her argument of how her combination of impairments compels a finding a disability.

### C.  Plaintiff's mental impairments

As discussed above, Defendant moved to remand to allow the ALJ, "to further evaluate Plaintiff's mental impairments, reassess Plaintiff's residual capacity (RFC), and re-determine whether Plaintiff can perform the physical and mental demands of her past relevant work, or alternatively whether she can perform other occupations existing in significant numbers in the national economy." Doc. 18 at 1.

In her response, Plaintiff did not dispute that the record required a remand to address Plaintiff's mental impairments. Doc. 21. Instead, Plaintiff argued that benefits should be awarded based on Plaintiff's physical limitations, self-reported symptoms, and third party reports. However, the Court has rejected each of these arguments above.

In her sur-reply, Plaintiff argues that her psychological/mental impairments, alone, entitle her to a remand for an award of benefits. Doc. 31 at 11. Specifically, Plaintiff argues that if her doctors' testimony is credited as true, she would be entitled to benefits. *Id*. Plaintiff seeks to have this Court credit Dr. Peetoom's opinion that Plaintiff needed extra

---

MOTHER WILL WANT TO CONTROL THE MONEY. **CLIENT REPORTED THAT SHE ALSO FEELS THAT HER PARENTS WILL DEMAND THAT THEY GET REIMBURSED FOR ALLOWING HER TO STAY WITH THEM ALL THIS TIME.**" *Id.* (emphasis added).

1 time and attention to adapt to changes in environment and routine and that Plaintiff needed
2 consistent exposure to information to facilitate retention. Doc. 31 at 11. Plaintiff also seeks
3 to have this Court credit Dr. Allen's opinion that Plaintiff had problems with persistence and
4 that her trembling and crying would likely cause problems. *Id.* Finally, Plaintiff seeks to
5 have the Court credit Dr. Allen's opinion that benefits for one year would be appropriate.
6 *Id.*

7 While Defendant has conceded that this case should be remanded for further
8 development of the record relating to Plaintiff's psychological/mental impairments,
9 Defendant has not conceded that the ALJ did not give adequate reasons for discrediting
10 Plaintiff's examining physicians. Instead, Defendant conceded that the ALJ did not
11 incorporate his findings regarding Plaintiff's limitations regarding concentration, persistence
12 and pace into Plaintiff's RFC, and thus the ALJ did not include these limitations in his
13 hypothetical to the vocational expert. Doc. 18 at 3. Further, Defendant argues that a remand
14 for benefits would be inappropriate because there was conflicting testimony regarding the
15 limitations caused by Plaintiff's mental impairments. *Id.* at 5. Thus, Defendant seeks
16 remand to resolve these factual disputes and to determine what impact, if any, the limitations
17 have on Plaintiff's RFC.

18 As indicated above, Plaintiff asks this Court to credit as true the testimony of Drs.
19 Allen and Peetoom, each of whom saw Plaintiff once. Doc. 31 at 11; Doc. 10-3 at 28. First,
20 the Court agrees with the ALJ that these doctors are properly characterized as examining
21 physicians, rather than treating physicians, because they each only saw Plaintiff once. Doc.
22 10-3 at 28. Next, the ALJ noted that he gave their findings little weigh because they each
23 only saw Plaintiff once and because their opinions were inconsistent with the weight of the
24 evidence. *Id.*

25 The ALJ further recounted in detail the various notes regarding Plaintiff's mental state
26 from her various doctors. Doc. 10-3 at 26-27. The Court agrees with Defendant that the
27 various doctors' notes are inconsistent with respect to the severity of Plaintiff's symptoms

28
- 10 -

as well as the impact of those symptoms. Given these conflicting reports, including the report of Plaintiff's treating physician, Dr. Bhatka, who indicated that Plaintiff was feeling much better in June of 2009 due to a new medication, the Court will not credit the examining physicians statements as true. Indeed, the Court finds that the ALJ gave specific and legitimate reasons for discrediting the findings of these examining physicians; specifically, the ALJ recounted three paragraphs of medical testimony which reported significantly less severe mental limitations for Plaintiff than her examining physicians' findings. *See* Doc. 10-3 at 26-27.

Based on the foregoing, the Court will remand this case to the agency as requested by Defendant. The Court denies Plaintiff's request for an immediate award of benefits.

**II.     Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Defendant's motion to remand is granted (Doc. 17) pursuant to sentence 4 of 42 U.S.C. § 405(g); this case is remanded to the agency and the Clerk of the Court shall enter judgment accordingly.

DATED this 25th day of March, 2014.

James A. Teilborg
Senior United States District Judge

- 11 -